**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICARDO MENDOZA and ALMA DELIA MENDOZA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 09 C 5866 ) ) |
| CITY OF CHICAGO, THOMAS O'GRADY, and ANTHONY VILLARDITA, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 23, 2012, Plaintiffs Ricardo Mendoza ("Mendoza") and his wife Alma Delia Mendoza (collectively "Plaintiffs') filed a Fourth Amended Complaint against Defendants City of Chicago, Chicago Police Detective Anthony Villardita, and Chicago Police Officer Thomas O'Grady alleging constitutional violations pursuant to the Court's original jurisdiction, and state law tort claims based on the Court's supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants City of Chicago's and Detective Vallardita's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a).[1]

For the following reasons, the Court grants Defendants' motion for partial summary judgment as to Count II of the Fourth Amended Complaint and dismisses Count II with prejudice against both Defendant Officers Villardita and O'Grady. The Court declines to exercise supplemental jurisdiction over the remaining state law claims because the Court is dismissing —

---

[1] Defendant City of Chicago is not defending Defendant Officer O'Grady in this matter. (R. 172, 3/11/13 Minute Order.) Defendant O'Grady has not filed a motion for summary judgment on his own behalf.

with prejudice — Plaintiffs' claim over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c). Therefore, the Court dismisses Counts III, IV, and V of the Fourth Amended Complaint without prejudice.

## BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's

statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632.  In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment.  The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012).  With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

During the relevant time period, Plaintiff Ricardo Mendoza was a bus driver for the Chicago Transit Authority ("CTA").  (R. 191, Defs.' Rule 56.1 Stmt. Facts ¶ 2.)  On September 12, 2009, shortly before 9:20 p.m., Defendant Officer O'Grady, who was off-duty at that time, and his girlfriend were biking on State Street in downtown Chicago.  (*Id.* ¶¶ 1, 17.)  At that same time, Mr. Mendoza was driving a CTA bus traveling southbound on State Street.  (*Id.* ¶ 2.)  As Mr. Mendoza approached the intersection of Madison and State Streets, he observed Officer O'Grady and his girlfriend near the intersection after which Mr. Mendoza honked his horn.  (*Id.* ¶¶ 3, 5.)  Mr. Mendoza lost sight of the couple as he continued through the intersection, but then observed Officer O'Grady in his rearview mirror.  (*Id.* ¶ 6.)  Thereafter, Officer O'Grady went around to the front of the bus and boarded the bus.  (*Id.* ¶ 7.)

When he boarded the bus, Officer O'Grady confronted Mr. Mendoza after which there was an altercation that two on-board surveillance cameras recorded.  (*Id.* ¶¶ 7, 8.)  Also, two uniformed Chicago Police Officers, Alex Guerrero and Robert Cortez, were riding Mr.

Mendoza's bus as passengers. (*Id.* ¶ 9.) Upon witnessing the altercation, the police officers escorted Officer O'Grady off of the bus. (*Id.*) The police officers then called the First District supervisor, Sergeant Villalobos, for assistance. (*Id.* ¶ 10.) Sergeant Villalobos took Officer O'Grady to the First District. (*Id.*)

At approximately 11:15 p.m. on that same day, Defendant Detective Villardita and two other detectives were assigned to investigate the matter, after which they met with Mr. Mendoza at the First District. (*Id.* ¶¶ 11, 12.) Mr. Mendoza's CTA supervisor was also present at the meeting. (*Id.* ¶ 12.) At that meeting, Mr. Mendoza told Detective Villardita and the other detectives that during the altercation on his bus that evening, Officer O'Grady punched him two times — one punch striking him on his glasses and the other grazing off the left side of his head. (*Id.* ¶ 13.) Mr. Mendoza also told Detective Villardita that he had been "examined and released at the hospital, and told to use eye drops for his eye." (*Id.*) It is undisputed that prior to his discussion with Detective Vallardita, an emergency room physician treated Mr. Mendoza for injuries around his left eye and concluded that Mr. Mendoza had "contusions to the left orbital region" and a "left subconjunctival hemorrhage." (R. 211, Pls.' Rule 56.1 Stmt. Add'l Facts ¶¶ 24, 25.) Further, undisputed evidence shows that Mr. Mendoza returned to the emergency room on September 13, 2009 for pain in his head, neck, and shoulder and a brief loss of consciousness. (*Id.* ¶ 32.)

Detective Villardita and the other detectives then interviewed Officers Guerrero and Cortez, who indicated that at the time of the altercation, they were seated at the back of Mr. Mendoza's CTA bus. (Defs.' Stmt. Facts ¶ 16.) When the officers heard yelling at the front of the bus, they observed a white male yelling at the bus driver that the bus nearly struck him. (*Id.*)

Both officers went up to the front of the bus and escorted the offender out, although they both stated that they never saw the offender strike the victim. (*Id.*) The detectives then interviewed Officer O'Grady at around 1:15 a.m. on September 13, 2009. (*Id.* ¶ 17.) Officer O'Grady told the detectives that he was off-duty during the altercation and that he did not want to make a statement without a lawyer. (*Id.*) Thereafter, the detectives requested a copy of the CTA camera records which were not available until September 14, 2009. (*Id.* ¶ 18.)

On September 15, 2009, Detective Villardita and the other detectives reviewed the CTA footage of the incident and saw no evidence of Officer O'Grady punching or striking Mr. Mendoza. (*Id*. ¶ 20.) That same day, Detective Villardita and the other detectives interviewed Officer O'Grady's girlfriend, who stated that she and Officer O'Grady were riding bicycles in the southbound lanes on State Street. (*Id.* ¶ 21.) She stated that a bus passed them on the left, but it cut them off and forced them into the curb. (*Id.*) Also on September 15, 2009, Detective Villardita and the other detectives interviewed Officer O'Grady, with his attorney present, at the Area Three police station. (*Id.* ¶ 23.) During his interview, Officer O'Grady stated that while riding southbound on State Street with his girlfriend, a bus pulled along side of them and forced them to move over to the right and that he feared that the bus would hit them. (*Id.* ¶ 24.) Officer O'Grady further stated that he wanted to confront the bus driver, but he denied making any contact with Mr. Mendoza. (*Id.* ¶¶ 25, 26.)

On September 16, 2009, the detectives contacted the Felony Review Unit of the Cook County State's Attorney's Office requesting that an Assistant State's Attorney ("ASA") come to Area Three to participate in an interview with Mr. Mendoza. (*Id.* ¶ 27.) Thereafter, ASA Mary Jo Murtaugh was dispatched to Area Three. (*Id.*) The detectives requested assistance because

5

the incident had been on the news and they did not want any allegations of a cover-up. (*Id.* ¶ 28.) ASA Murtaugh then interviewed everyone who was involved in the case. (*Id.* ¶ 29.) At his interview, Mr. Mendoza told ASA Murtaugh that Officer O'Grady hit him between the eyes, after which he started to lose consciousness. (*Id.* ¶ 30.) Mr. Mendoza also told ASA Murtaugh that Officer O'Grady hit him at least two more times on the side of the head and also struck him in the neck. (*Id.*) In addition, ASA Murtaugh interviewed Officer O'Grady with his attorney present. (*Id.* ¶ 32.) At that time, Officer O'Grady's attorney stated that Officer O'Grady would stand by his previously-given statement. (*Id.*) It is undisputed that Detective Villardita had no contact with Officer O'Grady except for the three times Officer O'Grady was interviewed on September 13, 15, and 16, 2009. (*Id.* ¶ 33.)

Thereafter, Detective Villardita and the other detectives continued their investigation, which included interviewing the paramedics who responded to the incident on September 12, 2009 and passengers who were on Mr. Mendoza's CTA bus at the time of the incident — none of whom saw Officer O'Grady make physical contact with Mr. Mendoza, although two of the passengers saw Officer O'Grady lunge at Mr. Mendoza. (*Id.* ¶¶ 34-37, 39-41; Pl.'s Stmt. Facts ¶¶ 12, 17.) On September 17, 2009, a subpoena issued for Mr. Mendoza's emergency room records and Detective Villardita briefly reviewed them. (Defs.' Stmt. Facts ¶¶ 42, 43.)

On or about October 8, 2009, Detective Villardita submitted his investigation to the Felony Review Unit to determine whether they would approve felony battery charges against Officer O'Grady. (*Id.* ¶ 44.) The Assistant State's Attorney who reviewed the investigation told Detective Villardita that the charges against Officer O'Grady would be rejected because (1) Mr. Mendoza provided two different accounts of the incident, (2) Mr. Mendoza's emergency room

6

records did not support the injuries he claimed, (3) the footage of the incident did not support Mr. Mendoza's version of the events, and (4) the statements from three CTA passengers did not support Mr. Mendoza's account of the incident. (*Id.* ¶ 45.)

Meanwhile, on or about November 3, 2009, a Chicago Police Lieutenant informed Detective Villardita that the State's Attorney's Office was charging Mr. Mendoza with felony disorderly conduct for filing a false report and obstruction of justice. (*Id.* ¶¶ 46, 48.) Chicago Police then arrested Mendoza on November 6, 2009 and on December 1, 2009, a Cook County grand jury returned an indictment against Mendoza for disorderly conduct and obstruction of justice. (*Id.* ¶¶ 49, 51.) Detective Villardita testified in front of the grand jury. (Pls.' Stmt. Add'l Facts ¶ 2.) Mendoza's criminal bench trial ended on October 18, 2011, after which the Cook County Circuit Court judge found Mendoza not guilty and discharged him. (Defs.' Stmt. Facts ¶ 53.)

In their Fourth Amended Complaint, Plaintiffs alleged a claim under *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against the City of Chicago in Count I, that Plaintiffs voluntarily dismissed on August 15, 2012; a conspiracy claim brought pursuant to 42 U.S.C. § 1983 against Defendant Officers Villardita and O'Grady in Count II, a state law negligence claim against Defendant Officer O'Grady in Count III, and a state law malicious prosecution claim against Defendant Officer Villardita and the City of Chicago in Count IV. In Count V, Plaintiff Alma Delia Mendoza alleged a state law loss of consortium claim against all Defendants.

Relevant to this Memorandum, Opinion, and Order is Plaintiffs' conspiracy claim as alleged in Count II. Specifically, in the Fourth Amended Complaint, Plaintiffs allege the

following underlying constitutional violations as a basis for the Section 1983 conspiracy claim: (1) that Defendant Officers Villardita and O'Grady violated Mr. Mendoza's rights under the Fourth and Fourteenth Amendments when his arrest was based upon a complaint that was known to contain false information; (2) that Defendant Officers O'Grady and Villardita violated Mr. Mendoza's Fifth, Sixth, and Fourteenth Amendment rights due to Defendant Officer O'Grady's false statements to the police, Defendant Officer Villardita's grand jury testimony, and both Defendant Officers' trial testimony; and (3) that Defendant Officers Villardita and O'Grady violated Mr. Mendoza's Eighth and Fourteenth Amendment rights because Mr. Mendoza was forced to post bail for conduct that was not a crime. To reiterate, Plaintiffs did not bring these alleged constitutional violations as individual claims, but as a basis for the Section 1983 conspiracy claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary

8

judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

## ANALYSIS

I.  **Conspiracy Claim — Count II**

In Count II of the Fourth Amended Complaint, Plaintiffs allege that Defendant Officers O'Grady and Villardita conspired to interfere with Mr. Mendoza's civil rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't,* 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir. 1999)). It is well-established that "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008).

In support of Mr. Mendoza's conspiracy claim, Plaintiffs argue that there is ample circumstantial evidence that Defendant Officers O'Grady and Villardita, along with unnamed co-conspirators, had a "meeting of minds" and "that the parties had an understanding to achieve the conspiracy's objectives." Plaintiffs explain that Defendant Officer Villardita, a 30- year veteran detective from the Violent Crime Unit, headed the conspiracy in which the conspirators

9

attempted to protect one of their own, namely, Defendant Officer O'Grady. Further, Plaintiffs argue that the co-conspirators willfully obfuscated evidence and that the co-conspirators purposely brought Assistant State's Attorney Murtaugh into the investigation to provide Detective Villardita "cover from a cover-up."

Evidence in the record, even viewed in a light most favorable to Plaintiffs, does not substantiate Plaintiffs' bare-boned claim that Defendant Officers Villardita and O'Grady, along with unnamed co-conspirators, had an agreement to inflict injury or harm upon Mr. Mendoza. Instead, it is undisputed that Defendant Officer Villardita's only contact with Defendant Officer O'Grady was during Officer O'Grady's interviews on September 13, 15, and 16, 2009, and there is no evidence in the record in which a reasonable jury could infer that during these interviews Defendant Officers O'Grady and Villardita had a "meeting of the minds" or an agreement regarding Mr. Mendoza. In fact, in response to Defendants' Rule 56.1 Statement of Facts, Plaintiffs admit that Officers Villardita and O'Grady never conspired to deprive Mr. Mendoza of his civil rights. (Defs.' Stmt. Facts ¶ 33.)

At summary judgment, a plaintiff must do more than speculate that a conspiracy existed. *See Sow,* 636 F.3d at 304; *see also Cooney v. Casady,* ___ F.3d ___, 2013 WL 4406668, at *4 (7th Cir. Aug. 18, 2013) ("'vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden' at summary judgment.") (citation omitted); *Lewis v. Mills,* 677 F.3d 324, 331 (7th Cir. 2012) ("conjecture alone cannot defeat a summary judgment motion") (citation omitted). Here, Plaintiffs fail to point to specific evidence supporting their allegations of conspiracy based on violations of Mr. Mendoza's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Indeed, it is undisputed that when

asked about his conspiracy allegations at his December 19, 2012 deposition, Mr. Mendoza could not point to any specific evidence of a conspiracy on the part of Defendant Officer Villardita, other than the fact that Mr. Mendoza had been criminally charged and that Defendant Officer Villardita, while investigating the September 12, 2009 incident, thought Mr. Mendoza was not truthful in his interviews. (Defs.' Stmt. Facts ¶ 54.)

Viewing the evidence and all reasonable inferences in Plaintiffs' favor, they have failed to set forth evidence creating a genuine issue for trial that a conspiracy existed. Accordingly, the Court grants Defendants' summary judgment motion as to Plaintiffs' Section 1983 conspiracy claim alleged in Count II of the Fourth Amended Complaint.

## II.   State Law Claims — Counts III, IV, and V

Plaintiffs' remaining claims include Mr. Mendoza's malicious prosecution claim, Alma Delia Mendoza's loss of consortium claim, and the negligence claim against Defendant Officer O'Grady — all brought pursuant to Illinois tort law. *See Bridewell v. Eberle,* 730 F.3d 672, 677 (7th Cir. 2013); *Hess v. Kanoski & Assoc.,* 668 F.3d 446, 456 (7th Cir. 2012); *Swearingen v. Momentive Specialty Chemicals, Inc.,* 662 F.3d 969, 972 (7th Cir. 2011). Because the Court is dismissing — with prejudice — Plaintiffs' claim over which the Court has original jurisdiction, namely, Plaintiffs' Section 1983 conspiracy claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c).

As the Seventh Circuit teaches, "[t]he supplemental-jurisdiction statute provides that the district court 'may decline to exercise supplemental jurisdiction" over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (quoting 28 U.S.C. § 1367(c)(3)); *see*

*also Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012) ("Generally, when a court has dismissed all the federal claims in a lawsuit before trial, it should relinquish jurisdiction over supplemental state law claims rather than resolve them on the merits."). Although the decision to relinquish supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co.,* 672 F.3d at 479 (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010)). Under this well-established precedent, the Court dismisses Plaintiffs' state law claims sounding in tort as alleged in Counts III, IV, and V of the Fourth Amended Complaint without prejudice.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for partial summary judgment as to Count II of the Fourth Amended Complaint and dismisses Count II with prejudice. Further, the Court relinquishes its supplemental jurisdiction over Plaintiffs' state law claims and dismisses Counts III, IV, and V of the Fourth Amended Complaint without prejudice.

**Dated**: December 2, 2013

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**